IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FIRST AMERICAN TITLE INSURANCE )
COMPANY, )
                                )
            Plaintiff,          )
                                )
v.                              )          Civil Action No.: 1:09-cv-403
                                )
WESTERN SURETY COMPANY, *et al.*, )
                                )
            Defendants.         )

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Western Surety Company's Motion to Dismiss (Dkt. No. 2). The Court held oral argument on this motion on May 15, 2009 and took this matter under advisement.

**I.      Background.**

Plaintiff First American Title Insurance Company ("First American" or "Plaintiff") underwrote Defendant First Alliance Title Company ("First Alliance Title")'s title insurance policy on a property in Alexandria, Virginia. This property was being refinanced by SunTrust Mortgage, Incorporated ("SunTrust"). As required by the Virginia Consumer Real Estate Settlement Protection Act (CRESPA), Virginia Code §§ 6.1-2.19, *et seq.*, First Alliance Title obtained a $100,000 surety bond from Western Surety, with SunTrust as the intended beneficiary.

Unbeknownst to SunTrust, an agent of First Alliance Title allegedly diverted the funds designated to pay off the original mortgages on the property. Consequently, SunTrust's refinance

mortgages were put in the third and fourth position, behind the original mortgagor's first and second mortgages. When the property owner stopped paying on the original mortgages, the original mortgagor foreclosed on the property. This resulted in a bankruptcy that wiped SunTrust's interest in the property and caused it to lose loan funds in the amount of $734,296.09. SunTrust made a claim on the title insurance policy underwritten by Plaintiff First American, which was paid in full. Plaintiff First American subsequently sued First Alliance Title in Fairfax Circuit Court and eventually obtained a judgment for the $734,296.09. Plaintiff First American then made formal demand upon Defendant Western Surety for the $100,000 amount of the surety bond, which Western Surety refused to pay.

In its complaint, Plaintiff First American asserts three common law claims for breach of contract against Western Surety and First Alliance Title, and seeks damages of $100,000, the full amount of the surety bond. Plaintiff argues under three separate breach of contract theories. The first theory is for direct liability under the plain language of the bond, which provides that "*any aggrieved person* may maintain an action in its own name against this bond to recover damages as a result of the Principal breaching any of the above-mentioned laws." Plaintiff argues that it has standing to assert a direct action on the bond as an "aggrieved person." Plaintiff's second theory is that it is a subrogee of SunTrust, the third-party beneficiary of the surety bond. Plaintiff's third theory is that First Alliance Title had rights to sue on the bond that it assigned to Plaintiff.

## II.     Discussion.

### A.     CRESPA does not preclude common law claims against the surety bond.

The first issue presented by this motion is whether the CRESPA statute precludes any

2

common law claims against the surety bond. Defendant Western Surety argues that CRESPA provides the exclusive remedy for actions on surety bonds issued pursuant to the statute, and because CRESPA contains no private right of action, Plaintiff is precluded from asserting its common law claims against the bond. "In enacting CRESPA, the General Assembly conferred upon the State Corporation Commission (the 'SCC') . . . the sole and exclusive right and standing to enforce the provisions of CRESPA." Defendant cites two cases holding that only the state licensing authority may bring a claim for a violation of CRESPA. *Stith v. Thorne*, 247 F.R.D. 89, 95-96 (E.D. Va. 2007) ("Stith is an individual and not a licensing authority; therefore she cannot pursue a private cause of action under CRESPA); *Koschene v. Hutchinson*, 2007 WL 6013037, at *3 (Frederick Cir. 2007) ("If [CRESPA] is violated, then the statute allows the licensing authority to invoke penalties upon the violators. Therefore, this Court finds that no private cause of action may be implied under CRESPA").

There is no doubt that actions for *statutory* violations of CRESPA must be brought by the state licensing authority. That does not, however, address the real issue in this motion: whether Plaintiff may bring a *common law* claim against the surety bond. Guidance from case law on this issue is minimal. The only two Virginia cases on point have reached opposite conclusions. In *Chicago Title Insur. Co. v. Main Street Title & Escrow LLC, et al.*, Case No. CL-2008-7406 (Fairfax Cir. 2008), the circuit court dismissed plaintiff's claim against the bond in a two-page letter opinion. In *First American Title Ins. Co. v. Classic Title & Escrow, Inc., et al.*, Case No. CL-2008-7383 (Fairfax Cir. 2008), the circuit court permitted a common law claim on a surety bond to proceed – albeit without written explanation.

In general, when the Virginia General Assembly wishes that a statute abrogate a common

3

law right of action, such as one for breach of contract, it must say so expressly. "[T]o alter or abrogate the common law policy, the General Assembly must manifest its intent to do so." *Peoples Sec. Life Ins. Co. v. Arrington*, 412 S.E.2d 705, 707 (Va. 1992); *see also Hyman v. Glover*, 348 S.E.2d 269, 271 (Va. 1986) ("the common law is not to be considered as altered or changed by statute unless the legislative intent be plainly manifested"). CRESPA contains no abrogation clause, and does not otherwise indicate any intent to preclude common law claims. In the absence of such intent, the Court cannot impute a statutory abrogation of common law rights. Thus, the Court finds that common law claims against the bond may proceed, and now turns to whether Plaintiff has standing to sue under the terms of the surety bond.

**B.     Plaintiff has standing to assert a direct cause of action for breach of contract.**

CRESPA requires that all settlement agents for real estate transactions acquire surety bonds. *See generally* Virginia Code §§ 6.1-2.19 *et seq.* It does not, however, specify the form or content of these bonds. This task is delegated to the State Corporation Commission, which has the authority to issue "subpoenas, rules, regulations, and orders" to effectuate the provisions of CRESPA. *See* VA Code § 6.1-2.25. In accord with the regulatory scheme, the Bureau of Insurance, a division of the State Corporation Commission, issues a general form for surety bonds. 14 VIRGINIA ADMINISTRATIVE CODE § 5-395-40 (B) ("[e]very title insurance agent and title insurance agency that acts as a settlement agent . . . shall file with the bureau a surety bond in an amount not less than $100,000 on a form prescribed by the bureau"). This standard form provides, among other things, that "any aggrieved person may maintain an action in its own name against this bond to recover damages as a result of the Principal breaching any of the above-mentioned laws." True to form, the surety bond at issue in this case contained this exact

4

language. If a statutory action by the State Corporation Commission were the only way to collect on a surety bond, then the bond language allowing "any aggrieved person" to bring an action would have no purpose.

This interpretation also furthers the purpose of the statutory/bond scheme put in place by CRESPA. If CRESPA precluded any common law right of action against the bond, a surety rarely would be liable because only the State Insurance Commission would be able to bring enforcement actions. This essentially would allow a windfall for sureties, as they would collect premiums on the bonds without facing any exposure to litigation from private litigants who may have been harmed by the principal's actions. It is unlikely that the General Assembly intended to authorize such a windfall, given that one purpose of CRESPA is to "authorize licensing authorities to promulgate consumer protection safeguards to be followed in real estate closings." *Koschene*, 2007 WL 6013037, at *2 (citing VA Code § 6.1-2.19).

Under the plain terms of the surety bond in this case, the Court finds that Plaintiff First American qualifies as an "aggrieved person" and may proceed on its direct claim for breach of contract. The term "person" in CRESPA encompasses a "legal entity." *See* VA Code § 6.1-2.20. Further, "the word 'aggrieved' in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally." *Virginia Beach Beautification Comm. v. Board of Zoning Appeals*, 344 S.E.2d 899, 902 (Va. 1986). As the underwriter for the title insurance policy, Plaintiff suffered an "imposition of a burden or obligation" when First Alliance Title (or its agent) misappropriated the loan funds and caused

5

Plaintiff to be obligated to pay out $734,296 to SunTrust due to no fault of its own.[1]

## C.  Plaintiff has no standing under an assignment theory.

The Court, however, must dismiss Plaintiff's contract claim based on the theory that First Alliance Title assigned rights to Plaintiff. Under the plain terms of the bond, "any aggrieved person may maintain an action . . . as a result of the Principal breaching any of the above-mentioned laws." First Alliance Title is the "Principal" whose unlawful actions trigger the obligation to pay under the bond. The bond does not allow the Principal to bring an action in its own name. To do so would make little sense because the principal has no standing to assert a claim against its own bond under principles of suretyship. *See In re M & T Elec. Contractors, Inc.*, 267 B.R. 434, 446 (Bankr. D.C. 2001). A surety bond protects a third person (the obligee or beneficiary) who may be damaged should the principal fail to perform.[2] Restatement (Third) of Suretyship and Guaranty § 1 (1995); *see also Lumbermens Mut. Cas. Co. v. Agency Rent-A-Car, Inc.*, 128 Cal. App. 3d 764, 769 (Ca. Ct. App. 1982). "It is not the duty of the surety to protect the principal . . . [t]he surety's duty runs to the third party obligee." *Schmitt v. Insurance Co. of*

---

[1]  The Court will allow Plaintiff's second claim under subrogation principles to proceed to discovery. It is unclear whether Plaintiff pleads this theory in the alternative or asserts that it is a stand-alone theory supporting a separate cause of action. Given the Court's holding that Plaintiff may proceed directly against the bond on Count I, it may be the case that Plaintiff no longer needs to resort to a subrogation theory. If Defendants wish to renew their arguments against Count II, they are entitled to do so at the summary judgment stage.

[2]  Every surety bond involves a three-party relationship: (1) The "Principal," or obligor, who is the party obligated under the original contract (in this case First Alliance Title); (2) the "Obligee," or beneficiary, who is the person for whose benefit the bond is given (in this case SunTrust); and (3) the "Surety," who is the party that guarantees the principal's obligations in exchange for a premium and the principal's promise to indemnify the surety for any loss (in this case Western Surety). *See* 3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 11:14 at 26 (3d. ed.1995); Restatement (Third) of Suretyship and Guaranty § 1 (1995).

*N. Am.*, 230 Cal. App. 3d 245, 258 (Ca. Ct. App. 1991).  Thus, First Alliance Title had no rights to sue under the bond, and therefore had no rights to assign to Plaintiff.

**III.    Conclusion.**

Accordingly, the Court will DENY Defendant Western Surety's Motion to Dismiss as to Counts I and II, and GRANT Defendant's Motion to Dismiss as to Count III.  An appropriate order shall be entered forthwith.

ENTERED this 27th day of May, 2009.

_____ /s/

Liam O'Grady
United States District Judge

Alexandria, Virginia

7